FRED A. RISSER, President Wisconsin State Senate
You ask two questions concerning the constitutionality of the potential development of "mixed use" facilities on the ground floors of state office buildings General Executive Facilities II and III (GEF II and GEF III respectively). First, you ask whether a restaurant serving both state employes and the general public in a state office building is constitutionally permissible. Second, you ask whether any other private establishments in a state office building would be constitutionally permissible. My answer to both questions is "yes," subject to the qualifications discussed below.
Finally, you ask whether the state is required to bid leases for a restaurant or other use in a state office building. My answer is "no." *Page 122 
The Legislature has vested the Building Commission with authority to determine which facilities are necessary and desirable to permit state agencies and departments to conduct public business. Secs. 13.48 and 13.488, Stats. Contained within a broad delegation of authority are specific provisions reading as follows:
 The building commission may lease space in state office buildings for commercial use, including without limitation because of enumeration, retail, service and office uses. In doing so the commission shall consider the cost and fair market value of the space as well as the desirability of the proposed use. Such leases may be negotiated or awarded by competitive bid procedures. All such leases of space in state office buildings shall provide for payments in lieu of property taxes.
Sec. 13.48 (23), Stats. It is my understanding that your reference to the development of "mixed uses" means the rental of state office space to commercial enterprises under sec. 13.48
(23), Stats.
All acts of the Legislature are entitled to a strong presumption of constitutionality and will not be overturned unless unconstitutionality is established beyond a reasonable doubt. State ex rel. Hammermill Paper Co. v. La Plante,58 Wis.2d 32, 46, 205 N.W.2d 784 (1973). Generally speaking, great leeway is given to the Legislature to accomplish its goals, and courts will not challenge the wisdom of the methods chosen by the Legislature. Wisconsin Solid Waste Recycling Auth. v. Earl,70 Wis.2d 464, 478, 235 N.W.2d 648 (1975). Further if there is any conceivable public purpose, the statute will be upheld. State exrel. Warren v. Nusbaum, 59 Wis.2d 391, 414, 208 N.W.2d 780
(1973).
It is a well-established principle of constitutional law that state funds may only be spent for a public purpose of statewide concern. State ex rel. Wisconsin Dev. Authority v. Dammann,228 Wis. 147, 183, 277 N.W. 278, 280 N.W. 698 (1938). Provision of facilities for the conduct of state business is unquestionably a public purpose. It follows that restaurant facilities, provided in a state office building for the convenience of state employes and citizens transacting business with the state, serve a public purpose. In fact, many state buildings, not only in Wisconsin, but around the country, have for years provided restaurant facilities for the use of state employes and citizens. Hopper v.Madison, 79 Wis.2d 120, 130, 256 N.W.2d 139 *Page 123 
(1977), held that important factors to be considered in making a determination of public purpose include "the objects for which taxes have been customarily levied," and "the objects which have been considered necessary for the support and proper use of government." In the only reported court case to consider the question you raise, the South Carolina Supreme Court, in holding that a cafeteria for state employes in a state office building was constitutional, noted that:
 Private enterprise has long realized that it is to its advantage to provide proper eating facilities for its employees and for many years various governmental agencies have done likewise, yet counsel has not cited and we know of no case where the right to do so has heretofore been questioned in the Courts.
Caldwell v. McMillan, 224 S.C. 150, 77 S.E.2d 798, 803 (1953).
This is not to say, however, that there are no limitations on the extent to which the state may provide restaurant facilities for the benefit of the public generally. In Hopper, the court also said that, in deciding whether the public purpose doctrine is complied with, consideration should among other things be given to "the extent to which the expenditure results in competition with private enterprise, the presence or absence of a general economic benefit, the number of citizens benefited, and the necessity and infeasibility of private performance."79 Wis.2d at 130.
In the development of restaurant facilities in GEF II and GEF III, the Commission should be mindful of secs. 47.08 and 47.09, Stats., which provide for operation of concession stands in state office buildings by blind persons. Pursuant to sec. 47.09, Stats., the Department of Administration has adopted a rule, requiring that:
 The establishment of concession stands and the granting of vending franchises in the several state office buildings and facilities rests with services to the blind, division of public assistance, department of health and social services as specified in s. 47.09, Stats. No other concession stands or vending machines shall be operated in the state office buildings and facilities.
Section Adm 2.12 (1) Wis. Adm. Code.
You further ask whether any other private establishments in a state office building would be constitutionally permissible. The broad nature of the question renders it impossible for me to specifically discuss *Page 124 
all potential private establishments. My response will therefore only set forth general guidelines.
To the extent that the private establishments to which you refer would be geared specifically to the use and convenience of state employes and citizens transacting state business, there would be no constitutional problems. Beyond those immediate public needs, it is reasonable to expect that additional needs will arise as a result of the construction and occupancy of the new buildings. Keeping in mind the factors set forth in Hopper, it is for the Commission to determine the type of facilities necessary to meet those public needs. Briefly summarized, Hopper
states that the benefit to the public generally, or a substantial number of citizens, and the ability of private enterprise to meet the public needs are factors to be considered in making such determination.
I also consider it necessary to discuss Wis. Const. art. VIII, sec. 10, which prohibits the state from engaging in "works of internal improvement." The term has been defined by the Wisconsin Supreme Court as follows:
 "`Works of internal improvement,' as used in the constitution, means, not merely the construction or improvement of channels of trade and commerce, but any kind of public works, except those used by and for the state in performance of its governmental functions, such as a state capitol, state university, penitentiaries, reformatories, asylums, quarantine buildings, and the like, for the purposes of education, the prevention of crime, charity, the preservation of public health, furnishing accommodations for the transaction of public business by state officers, and other like recognized functions of state government."
State ex rel. Owen v. Donald, 160 Wis. 21, 79, 151 N.W. 331
(1915) (quoting from Rippe v. Becker, 56 Minn. 100, 117,57 N.W. 331 (1894)). State office buildings fall clearly within the stated exception to the definition of "works of internal improvement."
The supreme court has resolved "internal improvements" questions by looking to the dominant purpose of the law at issue. In Wisconsin Solid Waste Recycling Auth. v. Earl, 70 Wis.2d 464,492, 235 N.W.2d 648 (1975), the court held that, "[i]f a law is predominantly public in its aim, it will not be held to violate the internal *Page 125 
improvements provision, in spite of the fact that the state carries on internal improvements incident to the main public purpose of the law." The primary purpose of the law in question here is to provide facilities for the conduct of state business. Any state activity along these lines which might be construed as engaging in works of internal improvement would be merely incidental to the achievement of the dominant public purpose and would, therefore, not violate the internal improvements clause.See generally Caldwell v. McMillan, 224 S.C. 150, 77 S.E.2d 798
(1953).
Finally, you ask whether the state is required to bid leases for a restaurant or other use in a state office building. Section13.48 (23), Stats., provides that "[s]uch leases may be negotiated or awarded by competitive bid procedures."
I assume that you raise the question in view of the state's general requirement that purchases be made from the lowest responsible bidder. Section 16.75 (1), Stats., requires that "contractual services" shall be purchased by the Department of Administration from the lowest responsible bidder. Section 16.70
(4), Stats., specifies that the term "contractual services" includes "all materials and services." I discussed in 65 Op. Att'y Gen. 251, 254-56 (1976), the term "`all . . . services"' as used in ch. 16, Stats., and concluded that the all-inclusive nature of the language, plus the legislative history of the act, required broad application of the section.
In this instance, however, the Legislature clearly declared in sec. 13.48 (23), Stats., that leases of state office building space may be negotiated or competitively bid. In doing so, it can safely be assumed that the Legislature was fully aware of the "lowest bidder requirement" and the definition of "contractual services," which were enacted prior to sec. 13.48 (23), Stats. 2A C. Sands, Statutes and Statutory Construction, sec. 51.02, 290 (4th Ed. 1973). Where the Legislature has unambiguously stated the law, it is not proper to go back to the earlier legislative acts and create an ambiguity. Commercial Credit Corp. v.Schneider, 265 Wis. 264, 61 N.W.2d 499 (1953). It is therefore my opinion that the state is not required to bid leases for a restaurant or other use in a state office building.
BCL:DDS *Page 126